No. 24364.

Phil I. Francis *v.* The County Court in and for the
City and County of Denver and State of Colorado,
and Honorable William V. Conley, one of the
Judges thereto.

(487 P.2d 375)

Decided July 6, 1971.

CREAMER & CREAMER, GEORGE LOUIS CREAMER, for plaintiff in error.

JAMES D. MCKEVITT, District Attorney, Second Judicial District, GREGORY A. MUELLER, Assistant, JARVIS W. SECCOMBE, Chief Deputy, EDWARD A. SIMONS, Deputy,

COLEMAN M. CONNOLLY, Deputy, for defendants in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THIS action, involving a challenge to the jurisdiction of the County Court of the City and County of Denver, was commenced on March 1, 1967, with the filing of a summons and complaint issued pursuant to 1965 Perm. Supp., C.R.S. 1963, 37-17-7. This document charged the Plaintiff in Error, and Defendant below, Phil I. Francis, with leaving the scene of an accident (C.R.S. 1963, 13-5-18) and failure to give information (C.R.S. 1963,

13-5-19). The space provided for the signature of the complainant contained the following:

"COMPLAINANT *Albert H. Preble.*
SERIAL NO. *47-2*
The above named complainant knows or believes and so alleges, that the above named defendant violated the herein described section(s) of the Colorado revised statutes, 1963, as amended, and further certifies that a copy of this summons was duly served upon the defendant in the manner prescribed by law."

At the bottom of the Summons and Complaint there is the following:

"Served by *Detective A. H. Preble, 47-2*
Date *Mar. 1, 1967* Time *2:30 p.m.*"

Francis entered a special appearance and upon denial of his motion to dismiss on jurisdictional grounds filed a complaint in the district court pursuant to C.R.C.P. 106 and seeking relief in the nature of a writ of prohibition. It was alleged therein that the trial court (the County Court of the City and County of Denver) had exceeded its jurisdiction on two grounds: (1) The Summons and Complaint described above was alleged to be defective; and (2) It was alleged that the judges of the County Court of the City and County of Denver were appointed in a manner that was constitutionally defective. Writ of error is to the judgment of dismissal by the district court.

I.

With respect to the first argument, Francis claims that the Summons and Complaint is defective because (1) It does not appear on the face of the document that it was issued by a peace officer, and (2) If not issued by a peace officer, it complies with neither the applicable statute nor rule of criminal procedure, and (3) It is not alleged on the face of the document that the crimes were committed in the presence of a peace officer, or (4) Alleged that the complainant had rea-

sonable grounds for believing that the offense was in fact committed by Francis. These are urged as relevant considerations in light of Crim. P. Rule 106(c)(3) (substantively identical to the provisions of 1965 Perm. Supp., C.R.S. 1963, 37-17-5), which reads as follows:

"A summons and complaint may be issued by a peace officer for an offense constituting a misdemeanor (i) which was committed in his presence or (ii) if not committed in his presence when he has reasonable ground for believing that the offense was committed in fact and that the offense was committed by the person charged." Rule 106(c)(3).

There is no dispute that this case was initiated pursuant to the "simplified" criminal procedure found in 1965 Perm. Supp., C.R.S. 1963, 37-17-1 to 37-17-15, and in Crim. P. 106. The contents of such summons and complaint are found not in section 37-17-5 which enumerates only those circumstances under which the form may be used, but rather in section 37-17-7.

This court has previously reviewed the statute and rule and announced the minimum requirements of a summons and complaint to be:

"1. The name of the defendant; 2. the offense charged; 3. a citation of the statute alleged to have been violated; 4. a brief statement or description of the offense charged, including the date and approximate location thereof; and 5. the direction that the defendant appear before a specified county court at a stated date, time and place."

\* \* \* \*

"By carefully spelling out in detail the 'contents' of a summons and complaint issued by a peace officer, the fact that there is no mention of any requirement that the 'summons and complaint' contain a verification becomes quite significant. In other words, the contents of a summons and complaint are those things enumerated in 1965 Perm. Supp., C.R.S. 1963, 37-17-7, *nothing more, nothing less*. The *expression* of one thing has long been said to mean the *exclusion of another*." (Emphasis added.)

312

*Stubert v. County Court*, 163 Colo. 535, 433 P.2d 97 (1967).

In concluding that the summons and complaint herein was valid, we note that the serial number identifying the complainant is to be found immediately following his signature. Further, the only person designated as having the authority to sign such forms are peace officers, and no issue is raised in the motion to quash challenging the capacity of the complainant to sign the summons and complaint. The allegations in the motion to quash merely stated that the description of the complainant as a peace officer is not on the face of the complaint. There is no requirement in the statute that he should be so described and there is no evidence offered to establish that complainant was not in fact within the designated class.

With respect to the remaining objections concerning the form of the summons and complaint, we hold that it is sufficient that the summons form alleges that the complainant "knows or believes" rather than stating more formally that he "knows or has reason to believe" that the accused committed the offense charged. The language used in the summons and complaint in the present case makes in substance the same allegation as that required by the statute and rule.

II.

Francis argues that the judges of the County Court of the City and County of Denver, it being a court of record, should have been either elected by the People or appointed by the Governor in accordance with the provisions of Article VI of the Constitution of the State of Colorado, rather than being appointed by the Mayor of the City and County of Denver pursuant to the provisions of Sections A13.8 *et seq.* of the Charter of the City and County of Denver.

Many of the arguments made by Francis in this regard have been previously disposed of by this court in

the case of *Meller v. Municipal Court,* 152 Colo. 130, 380 P.2d 668 (1963). *Meller* was decided prior to the 1965 amendment to the Colo. Const. Art. VI which, *inter alia,* replaced Denver's municipal courts with the present county court system. Nevertheless, the rationale of that case still remains totally applicable because the 1965 amendment provided for a county court system to replace the justices of the peace while still retaining the selection of the offices by appointment by the mayor in Denver and yet providing for a different method of selection for the remainder of the state.

Additionally, a somewhat similar situation was faced in the case of *Blackman v. County Court.* 169 Colo. 345, 455 P.2d 885 (1969), in which it was alleged that the County Court of Denver, like all other county courts throughout the state, is a constitutionally created state court, with only such jurisdiction as is permitted by Article VI, § 17, and the statutes enacted pursuant thereto, and this does not include jurisdiction in cases arising under municipal charters. In rejecting this contention, this court held as follows:

"It is significant that both the amended judicial article [passed in 1962] and Charter Amendment No. 1 became effective on the same date, January 12, 1965, thus indicating an intention to coordinate the relationship and function of the Denver municipal court system with the state county court system authorized by the 1962 judicial amendment. We note that by the 1962 judicial amendment the justice of the peace courts were eliminated from the Colorado judicial system and the jurisdiction therefore vested in such courts was transferred to the county courts. * * * This plan envisioned that the county court judges could serve not only as judges of the county court but also as judges of municipal and police courts." *Id.*

The 1965 amendment to Article VI is consistent with the interpretations given similar grants of power and

authority in the past, and does not require a departure from the rationale in *Meller*.

## III.

■ Another contention by Francis is that Article VI, Section 26 (providing that Denver may choose its own method for the selection of county court judges) is repugnant to the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution. The crux of his argument is that since voter approval in general election years is a part of the method of selection of county judges generally in the State of Colorado (Art. VI, §25), an exception cannot be made to deny Denver voters their franchise and thus violate the requirement for equal protection of the law.

We note that although no precise formula has yet been adopted, the courts have consistently held that the Fourteenth Amendment permits the states great latitude in enacting laws which affect some groups of citizens more than others. *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). The Equal Protection Clause does not require that a state never distinguish between its citizens, but only that the distinctions that are made not be arbitrary or invidious. *Avery v. Midland County,* 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1967). The constitutional safeguard is offended when the classification rests on grounds wholly irrelevant to the state's objective. *McGowan v. Maryland, supra.* As such, a statutory system of classification will not be set aside if a state of facts reasonably may be conceived to support it. *Norvell v. Illinois,* 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963); *McGowan v. Maryland, supra; Kotch v. Board of River Port Pilot Comrs.,* 330 U.S. 552, 67 S.Ct. 910; 91 L.Ed. 1093 (1946).

This court has examined certain home rule provisions granted by constitutional amendment in light of the Equal Protection Clause. In *Commissioners v. Denver,* 150 Colo. 198, 372 P.2d 152 (1962), *inter alia,* the Four-

teenth Amendment was found not to be in conflict with provisions granting the City and County of Denver annexation procedures unlike the provisions controlling other counties. The court stated:

"Even if there existed some constitutional restraint in the maintenance of county boundaries, *the fact that the annexation provisions of Article XX, Section 1, apply to the City and County of Denver to the exclusion of other counties would not, on that basis alone, constitute. a denial of equal protection of the laws to the people of Jefferson County.*" *Id.* (Emphasis added.)

The court then, in discussing the classification under attack, expressly recognized that ample justification exists for isolating the state capital in this constitutional amendment.

"The classification under Article XX, Section 1, is based on geographical and historical conditions peculiar to Denver as a capital city and regional commercial center, and *is neither arbitrary nor unreasonable.*" *Id.* (Emphasis added.)

Therefore, the court in *Commissioners v. Denver, supra,* held that a constitutional provision that, in effect, denied the voters of Jefferson County the right to vote on an annexation by Denver even though a vote would be required had the annexation been attempted by any other county in the state was constitutional because the classification was a reasonable one.

While the issue of Equal Protection was not discussed in the opinion, the *Meller* case, *supra,* considered a.challenge to the authority of a Denver municipal judge, acting as a justice of the peace, to hear a criminal case because the judge was appointed by the mayor rather than elected. In *Meller,* like the instant case, the judicial officer was appointed by the Denver mayor. The court upheld this procedure even though the constitution required election of justices of the peace because that section of the constitution was amended by Article XX. Implicit in this holding, although unarticulated, is the

absence of an invidious or unreasonable descrimination repugnant to the Fourteenth Amendment.

A situation analogous to that of the present case was presented in *Bowman v. Lewis,* 101 U.S. 23, 25 L.Ed. 989 (1880), where the Supreme Court was faced with an appellate procedure that maintained an intermediate reviewing court for a metropolitan area. Direct appeal to the Missouri Supreme Court was allowed from *rural* trial courts, but the procedure limited appeal from the *urban* appellate court to major issues. It was contended that the Equal Protection Clause was violated because some urban litigants were denied the right to appeal to the Supreme Court of Missouri even though a rural litigant in an identical case was afforded that right. The Court found no violation.

"Each state has the right to make political subdivisions of its territory for municipal purposes, and to regulate their local government. As respects to the administration of justice, it may establish one system of courts for cities and another for rural districts, one system for one portion of its territory and another system for another portion. Convenience, if not necessity, often requires this to be done, and it would seriously interfere with the power of a State to regulate its internal affairs to deny to it this right. We think it is not denied or taken away by anything in the Constitution of the United States, including the amendments thereto.

"We might go still further, and state, with undoubted truth, that there is nothing in the Constitution to prevent any state from adopting any system of laws or judicature it sees fit for all or any part of its territory. If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties, and the common law and its method of procedure for the rest of the State, there is nothing in the Constitution of the United States to prevent its doing so. * * *" *Id.*

While the facts of the instant case do not precisely paral-

lel the *Bowman* case, it is illustrative of latitude given the states by the Federal Constitution. The classification here challenged rests on the same rationale as that of the *Bowman* case, *i.e.,* providing for the only City and County in the state a procedure for judicial selection different from the remainder of the state.

The district court properly discharged the rule, and the judgment accordingly is affirmed.

MR. CHIEF JUSTICE PRINGLE not participating.