In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997–1998 # 64.

**Bennett S. AISENBERG, Petitioner,**

v.

**Douglas CAMPBELL and Mark Dorn, Respondents,**

and

**Rebecca Lennahan and Richard Westfall, Title Board.**

No. 98SA131.

Supreme Court of Colorado, En Banc.

June 22, 1998.

Susan E. Burch, Denver, for Petitioner.

Douglas Campbell, pro se.

Mark Dorn, pro se.

Gale A. Norton, Attorney General, Marthan Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, for the Title Board.

Justice MARTINEZ delivered the Opinion of the Court.

■ In this original proceeding brought pursuant to section 1–40–107(2), 1 C.R.S. (1997), the petitioner, Bennett S. Aisenberg, challenges the action of the initiative title setting board ("Title Board" or "Board") in setting the title, ballot title and submission clause, and summary for Initiative "1997–98—# 64" ("the Initiative").[1] The Initiative proposes to amend Article VI of the Colorado Constitution by adding a new section 6 to that article,[2] and to repeal several other provisions. Because we conclude that the Initiative contains multiple subjects in violation of Article V, Section 1(5.5) of the Colorado Constitution, we reverse the action of the Title Board.

## I.

The Initiative proposes substantial changes to the judicial branch of the state government. First, it would institute new requirements regarding the nomination, appointment, and retention of state court judges and justices, and impose new limits on the duration of a judicial term of office and the number of terms a judicial officer may serve. Section 6 provides that: (1) the maximum term of office for all state court judges and justices shall be four years, and no judge or justice may serve more than three future terms;[3] (2) a future partial term of one year or more constitutes a full term; (3) the governor shall nominate all future state court judges and justices, who need not be chosen from a nominating commission list;[4] (4) nominees possess the necessary qualifications for a state court judgeship if they are qualified electors who reside in the judicial district;[5] (5) no judge or justice may take office without senate approval following a public hearing held ten days or more after public notice; (6) all senate-approved nominees face a retention election in the next November election; (7) any judge or justice retained by less than a 60% vote must stand again for retention at the next November election (the resulting one-year term would count as a full term); (8) a judge or justice who has been defeated in a retention election may not take office until he or she wins a future election; (9) any judge or justice convicted of a crime or subject to a negative finding by the Commission on Judicial Discipline ("Commission") must stand for retention in the next November election to be held more than ninety days following the conviction or finding; (10) calendar year information concerning an incumbent's caseload, case resolution time, attend-

1. The text of the Initiative, along with the title, ballot title and submission clause, and summary, are attached to this opinion as an appendix.

2. Former Article VI, Section 6, entitled "Election of judges," was repealed November 8, 1966.

3. The Initiative proposes to repeal Article VI, Section 7, which sets forth a ten-year term of office for supreme court justices, and Article VI, Section 10(2), which provides, inter alia, that the term of office of a district judge shall be six years. The term of office for county court judges is already four years. See Colo. Const. art. VI, § 16. The term of office for court of appeals judges, which is not set forth in the constitution but in a statutory provision, is eight years. See § 13–4–104(1), 5 C.R.S. (1997).

4. The Initiative repeals Article VI, Section 20(1), which provides, inter alia, that a judicial vacancy "shall be filled by appointment of the governor," from a nominating commission list of two or three nominees. (Emphasis added.) The Initiative also repeals Sections 14 and 15 of Article VI, which provide, inter alia, that vacancies in the probate and juvenile courts of the city and county of Denver "shall be filled as provided in section 20 of this article."

5. The Initiative repeals Article VI, Section 8, which states that a person is not eligible to be a supreme court justice unless he or she is a qualified elector of the state of Colorado and has been licensed to practice law in Colorado for at least five years. The Initiative also repeals Article VI, Section 11, which imposes similar eligibility requirements for district court judges.

ance, and sentencing information must be made public and computer accessible by the following March 1; and (11) ballot information booklets and mailed election notices must contain the aforementioned calendar year information, as well as any criminal conviction or negative Commission finding, a statement in favor of retention, and a "summary" of all comments against retention (such comments may be filed by any Colorado resident).

Second, the Initiative modifies the qualifications and manner of selection of members of the Commission, as well as Commission powers. Section 6 provides that (1) the governor shall appoint and the senate approve all future Commission members and special masters, who may not be lawyers, judges, or justices;[6] and (2) all future Commission complaints, papers, hearings, and findings are to be public and computer accessible within ten days.[7] The Initiative also repeals Article VI, Section 23(3)(e), which grants the Commission power to conduct investigations, order formal hearings concerning the discipline of a justice or judge, request the supreme court to appoint special masters, take informal remedial action, and make recommendations to the supreme court as to whether a judge or justice should be removed, retired, or subjected to other disciplinary action.

Third, a provision ("immunity provision") of the Initiative immunizes, from "any civil or criminal liability," persons who, outside a courtroom, make critical comments about a

judge or justice that relate to his or her qualifications to serve.[8]

Fourth, the Initiative contains directives regarding the enforcement of its substantive provisions. Paragraph (4) of Section 6 states that its provisions (1) are to be strictly construed and are subject to strict compliance; (2) are severable and self-executing; and (3) supersede any other state or local provision. Paragraph (4) also provides that any Colorado resident shall have standing to enforce Section 6 by originally filing a suit in the supreme court. These suits must be decided within ninety days of filing, and successful petitioners are to be awarded attorney's fees and costs.

Finally, in addition to repealing provisions noted previously, the Initiative repeals: (1) that part of Article VI, Section 10(2), which provides that "[i]n each judicial district there shall be one or more judges of the district court"; and (2) Article VI, Section 26, which provides that the "number, manner of selection, qualifications, term of office, tenure, and removal" of judges of the county court of the City and County of Denver "shall be as provided in the charter and ordinances of the City and County of Denver."

The titles[9] of the Initiative and its summary were fixed by the Title Board on March 18, 1998. Both Aisenberg and the respondents, Douglas Campbell and Mark Dorn, subsequently filed motions for rehearing pursuant to section 1–40–107(1), 1 C.R.S. (1997). On April 1, 1998, the Board granted both

---

6. The Initiative repeals the second sentence of Article VI, Section 23(3)(a), which provides that the Commission is to consist of

[t]wo judges of district courts and two judges of county courts, each selected by the supreme court; two citizens admitted to practice law in the courts of this state, neither of whom shall be a justice or judge, who shall have practiced in this state for at least ten years and who shall be appointed by the governor, with the consent of the senate; and four citizens, none of whom shall be a justice or judge, active or retired, nor admitted to practice law in the courts of this state, who shall be appointed by the governor, with the consent of the senate.

7. The Initiative repeals Article VI, Section 23(3)(g), which provides, *inter alia*, that
[p]rior to the filing of a recommendation to the supreme court by the commission against any justice or judge, all papers filed with and pro-

ceedings before the commission on judicial discipline or masters appointed by the supreme court, pursuant to this subsection (3), shall be confidential, and the filing of papers with and the giving of testimony before the commission or the masters shall be privileged....

8. The Initiative repeals that part of Article VI, Section 23(3)(g) which provides that papers filed with and proceedings before the Commission "shall be privileged; but no other publication of such papers or proceedings shall be privileged in any action for defamation...."

9. "Titles," as used in this opinion, refers to the title, ballot title and submission clause of the Initiative.

parties' motions in part, denied them in part, and partially reworded the titles and summary. Aisenberg filed a petition for review in this court on April 6, 1998.

## II.

Aisenberg contends that the Board erred by fixing the titles and summary of the Initiative. According to Aisenberg, the Initiative contains more than one subject in violation of Section 1(5.5) of Article V of the Colorado Constitution. Alternatively, Aisenberg argues that the titles and summary are misleading and fail to correctly and fairly express the intent and meaning of the Initiative. *See* § 1–40–106(3), 1 C.R.S. (1997). Because we conclude that the Initiative contains multiple subjects, we do not address the argument that the titles and summary are misleading. *See In re Ballot Title "1997–98 # 30"*, 959 P.2d 822, 827 (Colo. 1998) (where initiative contained more than one subject, other contentions of petitioner were not addressed).[10]

■ The Colorado Constitution provides that the Title Board may not set the title of a proposed initiative, or submit it to the voters, if the initiative contains multiple subjects. *See In re Proposed Initiative "Petitions"*, 907 P.2d 586, 588 (Colo.1995). Section 1(5.5) sets forth the single subject requirement for initiatives, and provides, in pertinent part:

No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

A proposed initiative contains multiple subjects not only when it proposes new provisions constituting multiple subjects, but also when it proposes to repeal multiple subjects. *See In re Proposed Initiative "1996–4"*, 916 P.2d 528, 533 (Colo.1996).

This multiple subject prohibition is intended to prevent two practices by initiative proponents. First, it is intended to prevent "the practice of putting together in one measure subjects having no necessary or proper connection, for the purpose of enlisting in support of the measure the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits." § 1–40–106.5(1)(e)(I), 1 C.R.S. (1997); *see also In re "1997–98 # 30"*, 959 P.2d at 825 (single subject requirement intended to address concern that "proponents would combine different proposals in the hopes of getting unrelated subjects passed by enlisting support for the entire initiative from advocates of the separate subjects"); *In re Proposed Initiative "Public Rights in Waters II"*, 898 P.2d 1076, 1079 (Colo.1995) (same). Second, the single subject requirement is intended "to prevent surprise and fraud from being practiced upon voters." § 1–40–106.5(1)(e)(II), 1 C.R.S. (1997); *see In re "Public Rights in Waters II"*, 898 P.2d at 1079 (Section 1(5.5) "is intended to prevent voter surprise or uninformed voting caused by items concealed within a lengthy or complex proposal").

■ An initiative violates the single subject requirement when it has "at least two distinct and separate purposes which are not dependent upon or connected with each other." *Id.* at 1078–79. This requirement is intended to ensure that each proposal within an initiative "depends on its own merits for passage." *In re Proposed Initiative "1996–17"*, 920 P.2d 798, 802 (Colo.1996) (per curiam). Where two provisions advance separate and distinct purposes, the fact that they both relate to a broad concept or subject is insufficient to satisfy the single subject requirement. *See In re "1996–4"*, 916 P.2d at 532 ("Grouping the provisions of a proposed

---

**10.** Nor do we reach the question of whether it is appropriate for us to address issues not raised by the parties in this special statutory proceeding. For example, the petitioner does not raise the issue of whether the titles and summary are misleading because they fail to refer to the proposed elimination of the constitutional requirement that district court judges and supreme court justices be licensed attorneys.

initiative under a broad concept that potentially misleads voters will not satisfy the single subject requirement."). In determining whether a proposed initiative comports with the single subject requirement, "[w]e do not address the merits of a proposed initiative, nor do we interpret its language or predict its application if adopted by the electorate." *In re "Petitions"*, 907 P.2d at 590. Our inquiry is limited, rather, to determining whether the "constitutional prohibition against initiative proposals containing multiple subjects has been violated." *In re "1997–98 # 30"*, 959 P.2d at 824; *see also* § 1–40–106.5(2), 1 C.R.S. (1997) (Section 1(5.5) is to "be liberally construed, so as to avert the practices against which [it is] aimed and, at the same time, to preserve and protect the right of initiative and referendum").

## III.

The Title Board argues that the Initiative concerns one subject, "the qualifications of persons for judicial office." The Initiative satisfies the single subject requirement, the Board maintains, because "[i]t does nothing more than determine the commencement and termination of appointments to judgeships and the procedures for such appointment and termination." We disagree.

If the Initiative confined itself solely to the purpose advanced by the Title Board, namely, the requirements and procedures for the commencement and termination of appointments to judgeships, it might encompass only one subject.[11] Contrary to the Board's position, however, we conclude that a number of the Initiative's provisions seek to achieve

purposes that bear no necessary or proper connection to the qualifications of judicial officers. Generally, an individual has the necessary "qualifications" for judicial office if he or she possesses "the qualities, properties, or circumstances, natural or adventitious, which are inherently or legally necessary to render him [or her] eligible to fill" the judicial office. *Black's Law Dictionary* 1241 (6th ed.1990) (definition of "qualification"). In light of this definition, we conclude that those parts of the Initiative which repeal the constitutional requirement that each judicial district have a minimum of one district court judge, deprive the City and County of Denver of control over Denver County court judgeships, immunize from liability persons who criticize a judicial officer regarding his or her qualifications, and alter the composition and powers of the Commission, constitute separate and discrete subjects. We address each of these provisions in turn.[12]

### A.

■ We consider, first, the Initiative provision repealing the constitutional requirement, set forth in Article VI, Section 10(2), that each judicial district have at least one district judge. We hold that this provision constitutes a separate subject in violation of Section 1(5.5).

The first sentence of Section 10(2) provides that "[i]n each judicial district there shall be one or more judges of the district court." Colo. Const. art. VI, § 10(2). Thus, the purpose of this provision is to establish the minimum number of district judgeships to which a particular district is entitled, not to

---

11. We recognize that many of the provisions in the Initiative have a proper connection to the subject of the qualifications of judicial officers. For example, those provisions devoted to changing the manner by which state court judges are nominated, appointed and retained, the duration of judicial terms of office, and the imposition of term limits, do not violate section 1(5.5) because they all relate to the purpose of modifying the qualifications an individual must possess to serve as a judicial officer. *See In re "Petitions"*, 907 P.2d at 591 (even comprehensive initiative contains single subject if all of its provisions relate to a single purpose).

12. Although the Initiative could affect the members of this Court if adopted by the voters, we do

not for this reason disqualify ourselves from addressing the issues raised in this proceeding. Since this court is the only judicial forum authorized to review the Board's action, *see* § 1–40–107(2), the rule of necessity requires us to address the petitioner's claims. *See Mountain States Tel. & Tel. Co. v. District Court*, 778 P.2d 667, 668 n. 1 (Colo.1989) (where disqualification of tribunal would deprive parties of access to appropriate judicial forum, "the rule of necessity prevails over any conceivable basis for disqualification"). *See generally deKoevend v. Board of Educ.*, 688 P.2d 219, 229 n. 6 (Colo.1984) (discussing cases in which the rule of necessity was invoked by the United States Supreme Court).

address the qualifications of judicial officers. Specifically, it is apparent that this requirement does not affect the "qualities, properties, or circumstances" a person must possess in order to be a district judge.[13] Since the repeal of this constitutional requirement must therefore seek some unrelated purpose, we conclude that it addresses a separate subject.

### B.

■ We further conclude that the Initiative provision proposing to repeal Article VI, Section 26, which grants the City and County of Denver control over county court judges of the City and County of Denver, constitutes a separate subject.

Although it is not part of Article XX, the "home rule" article of the Colorado Constitution, Section 26 is a home rule provision. *See Francis v. County Court,* 175 Colo. 308, 314–17, 487 P.2d 375, 378–79 (1971) (treating Section 26 as a home rule provision). Generally, home rule provisions reflect an intent to vest in home rule cities "the plenary power of self-government" over matters of local concern. *Denver Urban Renewal Auth. v. Byrne,* 618 P.2d 1374, 1380 (Colo.1980); *see also* Colo. Const. art. XX, § 6 ("It is the intention of this article to grant and confirm to the people of all municipalities coming within its provisions the full right of self-government in both local and municipal matters...."); *Colorado Open Space Council, Inc. v. City & County of Denver,* 190 Colo. 122, 124, 543 P.2d 1258, 1259 (1975) (home rule provisions are " 'intended to reiterate unmistakably the will of the people that the power of a municipal corporation should be as broad as possible within the scope of a republican form of government of the state' " (quoting *City of Fort Collins v. Public Utils. Comm'n,* 69 Colo. 554, 555–56, 195 P. 1099, 1099 (1921))). As a home rule provision, the purpose of Section 26 is to grant to the City and County of Denver power and authority over Denver county court judgeships, not to

address the qualifications necessary to become a judicial officer. *See Francis,* 175 Colo. at 315, 487 P.2d at 378 (home rule provisions concerning the City and County of Denver are " 'based on geographical and historical conditions peculiar to Denver as a capital city and regional commercial center' " (quoting *Board of County Comm'rs v. City & County of Denver,* 150 Colo. 198, 207, 372 P.2d 152, 157 (1962))).

Thus, although Section 26 indirectly affects the qualifications of Denver County court judges in the sense that it changes the governmental entity which controls those qualifications, its objective is to allocate authority over Denver county court judgeships to the City and County of Denver. The repeal of this provision therefore serves a similar purpose of reallocating governmental authority and control. Accordingly, because the Initiative provision repealing Section 26 does not share a unifying or common objective with those provisions changing the qualifications of judicial officers, we hold that this provision is also inconsistent with the single subject requirement. *See In re "Public Rights in Waters II",* 898 P.2d at 1080 (even when provisions share some common characteristic, they do not satisfy single subject requirement when they do not have a "unifying or common objective"); *see also In re Petition "Amend Tabor No. 32",* 908 P.2d 125, 128 (Colo.1995) ("[I]f an initiative effects one general object or purpose, it will satisfy the single-subject requirement.").

### C.

■ We also hold that the immunity provision of the Initiative, which confers absolute immunity upon individuals who, outside a courtroom, criticize a judicial officer concerning his or her qualifications, serves a purpose that is disconnected from the qualifications of judicial officers.

The Title Board argues that the immunity provision [14] is related to the qualifications of

---

13. Thus, it is not surprising that neither the Title Board nor the respondents present any argument as to how the repeal of this requirement is consistent with the purpose of changing the qualifications of judicial officers.

14. The "immunity" provision is contained in Paragraph (3)(b) of Section 6, and states that "[n]o criticism, except in a courtroom, relating to any qualification to serve as a judge or justice

judicial officers because its passage would increase the chances of public participation in the retention process. Even assuming, however, that this result would occur, we do not agree that the provision thereby relates to the qualifications of those officers.

The plain language of the immunity provision indicates that its purpose is to grant persons who comment about a judicial officer absolute protection from civil or criminal liability, even when criticism leveled against a judge is a false statement of fact that damages the judge's reputation. Thus, the provision would set forth a new common law defamation standard when the subject of a critical comment is a judicial officer. *See Keohane v. Stewart*, 882 P.2d 1293, 1299 (Colo.1994) (the First Amendment does not confer absolute immunity upon those who criticize a judicial officer on a matter of public concern); *see also In re Proposed Petition "Petition Procedures"*, 900 P.2d 104, 109 (Colo.1995) (proposed initiative contained multiple subjects which both altered the procedures for filing petitions and created substantive "fundamental rights" unrelated to these procedural changes).

It may be true, as the Title Board contends, that the provision will result in more public commentary concerning judicial incumbents. However, given that matters of opinion concerning the qualifications of a judicial officer are already protected from defamation lawsuits under the First Amendment, *see Keohane*, 882 P.2d at 1298–99, the only change the immunity provision would make to existing law is to protect false statements of fact. Clearly, a provision whose purpose is to protect defamatory statements concerning a judge does not relate to the judge's qualifications for office since defamatory statements are, by definition, false. *See id.* at 1298. We therefore conclude that the immunity provision is also a separate subject because it serves no purpose related to the qualifications of judicial officers.

### D.

 Lastly, we consider the Initiative provisions which seek to divest the Commission of its investigatory and remedial powers, and change the qualifications for Commission membership. We determine that these provisions also have no relationship to the qualifications of judicial officers and therefore constitute a separate subject under Section 1(5.5).

 Under the Colorado Constitution, the "judicial power" is vested solely in the courts. *See* Colo. Const. art. VI, § 1 (judicial power of the state shall be vested in a supreme court, district courts, probate and juvenile courts of the City and County of Denver, county courts, and other courts as the General Assembly may establish); *Sanders v. District Court*, 166 Colo. 455, 459, 444 P.2d 645, 647 (1968) (noting that Article VI, Section 1 "declares that the judicial power of the state shall be vested" in designated courts or courts established by the legislature). The power of the Commission, however, is not derived from this judicial power, but rather has a separate and independent constitutional basis. *See* Colo. Const. art. VI, § 23(3)(e) (establishing Commission powers to conduct investigations of judges and justices, convene formal hearings, request appointment of special masters by supreme court, take informal remedial action based upon finding of good cause, and make recommendations to the supreme court regarding the removal or other discipline of a judge or justice). Under the Colorado Constitution, the Commission is thus an independent constitutional body charged with investigating and, to a limited degree, enforcing the Colorado Code of Judicial Conduct. Moreover, individuals acting in their capacity as Commission members are not "judicial officers." The term, "judicial officer," is reserved solely for judges. *See People v. Proffitt*, 865 P.2d 929, 933 (Colo.App.1993) (judges are referred to as "the court" or as "judicial officers," while attorneys, receivers, investigators, and other employees of the court are referred to as "officers of the court").

Because the Commission is an independent constitutional body whose members are not "judicial officers," it follows that any alteration of Commission powers, or the composition and manner of selection of Commission

shall cause any civil or criminal liability whatso- ever."

membership, does not serve the purpose of altering the qualifications of judicial officers. Although the Commission concededly is a part of the judicial branch, this fact does not change the result. If the entire judicial branch were regarded as a single subject, incongruous and disconnected provisions could be contained in a single initiative and the very practices the single subject requirement was intended to prevent would be facilitated. See In re "Public Rights in Waters II", 898 P.2d at 1079 (where two provisions merely have a common characteristic, such a connection is "too broad and too general" to make them part of the same subject). We therefore conclude that the Initiative provisions proposing to change the composition, manner of selection, powers and procedures of the Commission further a distinct purpose, and therefore violate the single subject requirement.

## IV.

We hold that the Initiative encompasses multiple subjects in violation of Section 1(5.5) of Article V of the Colorado Constitution. We therefore conclude that the Title Board erred by fixing the titles and summary of the Initiative. Accordingly, we reverse the action of the Title Board, and return this matter to the Board with directions to strike the titles and summary and return the Initiative to the proponents.

KOURLIS and BENDER, JJ., dissent.

## APPENDIX

Proposed Initiative Number 1997–98 # 64 [1]

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING JUDICIAL OFFICERS, AND, IN CONNECTION THEREWITH, LIMITING FUTURE TERMS OF OFFICE FOR CERTAIN STATE COURT JUDGES AND JUSTICES TO THREE TERMS OF FOUR YEARS AT EACH COURT LEVEL; PROVIDING THAT THE GOVERNOR NOMINATES ALL STATE COURT JUDGES AND JUSTICES SUBJECT TO SENATE CONFIRMATION; REQUIRING CONFIRMED JUDGES AND JUSTICES TO STAND FOR RETENTION AT THE FIRST NOVEMBER ELECTION FOLLOWING CONFIRMATION; REQUIRING ANY JUDGE OR JUSTICE WHO IS CONVICTED OF A MISDEMEANOR OR FELONY OR WHO RECEIVES A NEGATIVE FINDING FROM THE COMMISSION ON JUDICIAL DISCIPLINE TO STAND FOR RETENTION AT THE NEXT NOVEMBER ELECTION; PROVIDING THAT FUTURE MEMBERS OF THE COMMISSION ON JUDICIAL DISCIPLINE SHALL BE APPOINTED BY THE GOVERNOR SUBJECT TO SENATE CONFIRMATION AND SHALL NOT BE A LAWYER, JUDGE, OR JUSTICE; REQUIRING CERTAIN COMMISSION RECORDS AND AN ANNUAL REPORT ON EACH JUDGE AND JUSTICE TO BE PUBLIC AND COMPUTER ACCESSIBLE; PROHIBITING CIVIL OR CRIMINAL LIABILITY FOR CRITICISM OF A JUDGE OR JUSTICE RELATING TO THE JUDGE'S OR JUSTICE'S QUALIFICATIONS; REQUIRING THAT BALLOT INFORMATION BOOKLETS OR MAILED ELECTION NOTICES CONTAIN SPECIFIED INFORMATION ON EACH JUDGE OR JUSTICE SUBJECT TO A RETENTION ELECTION; PROVIDING THAT ANY JUDGE OR JUSTICE WHO IS RETAINED BY LESS THAN A 60% MAJORITY IS RETAINED FOR ONE YEAR ONLY; PROHIBITING ANY JUDGE OR JUSTICE DEFEATED IN A RETENTION ELECTION FROM AGAIN SERVING AS A JUDGE OR JUSTICE UNLESS APPROVED BY THE VOTERS; PROVIDING RULES AND PROCEDURES FOR ACTIONS TO ENFORCE THE NEW SECTION; AND REPEALING PROVISIONS OF THE CONSTITUTION TO CONFORM WITH THE NEW SECTION.

1. Judicial Qualifications.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING JUDICIAL OFFICERS, AND, IN CONNECTION THEREWITH, LIMITING FUTURE TERMS OF OFFICE FOR CERTAIN STATE COURT JUDGES AND JUSTICES TO THREE TERMS OF FOUR YEARS AT EACH COURT LEVEL; PROVIDING THAT THE GOVERNOR NOMINATES ALL STATE COURT JUDGES AND JUSTICES SUBJECT TO SENATE CONFIRMATION; REQUIRING CONFIRMED JUDGES AND JUSTICES TO STAND FOR RETENTION AT THE FIRST NOVEMBER ELECTION FOLLOWING CONFIRMATION; REQUIRING ANY JUDGE OR JUSTICE WHO IS CONVICTED OF A MISDEMEANOR OR FELONY OR WHO RECEIVES A NEGATIVE FINDING FROM THE COMMISSION ON JUDICIAL DISCIPLINE TO STAND FOR RETENTION AT THE NEXT NOVEMBER ELECTION; PROVIDING THAT FUTURE MEMBERS OF THE COMMISSION ON JUDICIAL DISCIPLINE SHALL BE APPOINTED BY THE GOVERNOR SUBJECT TO SENATE CONFIRMATION AND SHALL NOT BE A LAWYER, JUDGE, OR JUSTICE; REQUIRING CERTAIN COMMISSION RECORDS AND AN ANNUAL REPORT ON EACH JUDGE AND JUSTICE TO BE PUBLIC AND COMPUTER ACCESSIBLE; PROHIBITING CIVIL OR CRIMINAL LIABILITY FOR CRITICISM OF A JUDGE OR JUSTICE RELATING TO THE JUDGE'S OR JUSTICE'S QUALIFICATIONS; REQUIRING THAT BALLOT INFORMATION BOOKLETS OR MAILED ELECTION NOTICES CONTAIN SPECIFIED INFORMATION ON EACH JUDGE OR JUSTICE SUBJECT TO A RETENTION ELECTION; PROVIDING THAT ANY JUDGE OR JUSTICE WHO IS RETAINED BY LESS THAN A 60% MAJORITY IS RETAINED FOR ONE YEAR ONLY; PROHIBITING ANY JUDGE OR JUSTICE DEFEATED IN A RETENTION ELECTION FROM AGAIN SERVING AS A JUDGE OR JUSTICE UNLESS APPROVED BY THE VOTERS; PROVIDING RULES AND PROCEDURES FOR ACTIONS TO ENFORCE THE NEW SECTION; AND REPEALING PROVISIONS OF THE CONSTITUTION TO CONFORM WITH THE NEW SECTION?

The summary prepared by the Board is as follows:

This measure amends the Colorado constitution and would affect all county and district court judges, the probate and juvenile court judges in the City and County of Denver, judges of the court of appeals, and justices of the supreme court. It would limit future terms of certain judges and justices to four years and prohibit any judge or justice from serving more than three future terms at each court level. The measure provides that a future partial term of more than one year constitutes a full term.

The measure changes the manner in which all state court judges and justices are selected by allowing the governor to nominate any qualified elector who resides in the judicial district even if the person were not selected by a judicial nominating commission. The measure would prohibit any judge or justice from taking office until confirmed by the senate following a public hearing held after at least ten days' notice. It requires all judges and justices to face a retention election in the first November following confirmation by the senate.

The measure would require any judge or justice convicted of a felony or misdemeanor or subject to any negative finding by the commission on judicial discipline to face a retention election in the next November election more than ninety days following the conviction or finding.

Any judge or justice retained by less than a 60% majority must again stand for retention at the next November election. The measure prohibits a judge or justice who has been defeated in a retention election from serving in any judicial position unless approved by voters at a future election.

The measure requires future members of the commission on judicial discipline to be

confirmed by the senate and prohibits lawyers, judges, or justices from being future members. It would establish that all future complaints, papers, hearings, and findings of the commission are public and must be made computer accessible within 10 days.

The measure would require that calendar year information concerning the caseload, case resolution time, attendance, and criminal sentencing information for each judge or justice be made public and computer accessible by the following March 1.

The measure would prohibit any civil or criminal liability based upon criticism of a judge relating to the judge's qualifications, unless the criticism occurs in a courtroom.

For each judge or justice facing a retention election, the measure would require ballot information booklets and mailed election notices to contain information concerning any felony or misdemeanor conviction or negative finding by the commission on judicial discipline, the prior year's record concerning caseload, case resolution time, attendance, and criminal sentencing information, and a statement in favor of retention and a summary of comments filed by any Colorado resident against retention.

The measure states that it shall be strictly construed and shall be superior to any other state or local provision. It provides that any Colorado resident has standing to enforce its provisions, that the Colorado supreme court has exclusive original jurisdiction to hear and decide any case concerning its enforcement, and that only a successful plaintiff may receive legal fees and costs.

The measure would repeal numerous provisions of the Colorado constitution including:

- The current terms of office and qualifications for judges and justices;
- The appointments of judges and justices exclusively from a list of nominees submitted by a judicial nominating commission;
- The authority of the commission on judicial discipline to order informal remedial action, to order a formal hearing, to request the appointment of three judges or justices as special masters, and to recommend that action, including the assessment of costs, be taken against a judge or justice;
- The confidentiality of papers and proceedings before the commission on judicial discipline;
- The qualifications, appointment, procedures, and number of members of the commission on judicial discipline and special masters; and
- The authority of the charter and ordinances of the city and county of Denver to set the qualifications, method of selection, term of office, and removal of county judges for the city and county of Denver.

The Department of Local Affairs can see no direct fiscal impact on local governments resulting from the enactment of the measure.

The Office of State Planning and Budgeting deems the fiscal impact of this initiative on the state to be significant but indeterminate, since there will be additional elections and there may be backlogs in the legislature and the courts due to the confirmation process. Moreover, there will be a cost to make judges' records computer accessible. The Office of State Planning and Budgeting estimates that the base cost of replacing judges in fiscal year 1999–2000 may be $398,123.

Hearing adjourned March 18, 1998, 4:05 p.m.

April 1, 1998 Rehearing

- Mr. Bennett S. Aisenberg Motion granted in part, denied in part.
- Mr. Douglas Campbell and Mr. Mark Dorn Motion granted in part, denied in part.

Rehearing adjourned April 1, 1998, 2:45 p.m.

The text of the Initiative is as follows:

Section 1. Article VI of the state constitution is amended to add the following:

**Section 6. Judicial qualifications.** Beginning November 5, 1998:

(1) **Term limits.** Future terms of office for all county, district, court of appeals, and supreme court judges and justices shall be four years. At each level, no person shall serve more than three future terms of office. A future partial term of one year or more shall count as a term of office.

**(2) Nomination.** The governor shall nominate all future county, district, probate, juvenile, court of appeals, and supreme court judges and justices. None shall take office without senate approval following a hearing with public testimony, held ten days or more after public notice. Nominees need not be chosen from a nominating commission list, but shall be qualified electors who reside in their judicial district during their term of office. Senate-approved nominees shall face a retention vote in the next November election.

**(3) Discipline and retention. (a)** Despite any appeal, delayed sentence, or other excuse, any felony or misdemeanor criminal conviction, or any negative finding by the commission on judicial discipline, shall compel a special retention vote at the next November election date 90 days or more after that conviction or finding. With senate approval, the governor shall appoint all future commission members and special masters, who shall not be lawyers, judges, or justices.

**(b)** To inform potential voters at regular or special elections: all future commission complaints, papers, hearings, and findings shall be public, and be computer accessible within ten days; complete calendar year records on caseload, case resolution time, attendance, and criminal sentencing by each judge or justice shall be public and computer accessible by the next March 1; and no criticism, except in a courtroom, relating to any qualification to serve as a judge or justice shall cause any civil or criminal liability whatsoever. In 10-point or larger type, ballot information booklets and mailed election notices shall include any conviction or finding defined in (a), the latest yearly record, and up to 500 words each for the incumbent and for a summary by the election official of all comments against retention, which may be filed by any Colorado resident. A majority under 60% shall retain that incumbent for one year only. No defeated incumbent shall serve in any judicial position again except after voter approval at a later election.

**(4) Enforcement.** This section shall be strictly construed; substantial compliance is insufficient. Its provisions are severable and self-executing, and shall not be harmonized with or balanced against, but shall supersede, any other state or local provision. Any Colorado resident shall have standing to enforce this section. Suits shall be originally filed and heard in the supreme court and finally decided within 90 days of filing. Legal fees and costs shall be paid to successful plaintiffs only.

Section 2. Article VI, sections 7, 8, 10(2), 11, 14, 15, 20(1), 23(3)(e), 23(3)(g), 26, and the second sentence of 23(3)(a) of the state constitution are repealed.

Justice KOURLIS and Justice BENDER dissenting:

The majority holds that Initiative 1997–98 # 64 which seeks to amend Article VI of the Colorado Constitution by changing the qualifications for judicial officers, contains multiple subjects in violation of Article V, Section 1(5.5) of the Colorado Constitution. See maj. op. at 1200. Because we believe that the sections of the proposed initiative that the petitioners challenge are all related to the single subject of judicial qualifications, we respectfully dissent.

I.

The purpose of the single subject requirement is to avoid the inclusion of incongruous subjects in the same initiative and thereby prevent voter fraud and surprise. See *In re Proposed Initiative 1996–4*, 916 P.2d 528, 531 (Colo.1996). A proposed initiative violates this constitutional requirement when it relates to more than one subject and possesses two distinct and separate purposes that are neither dependent upon nor connected to each other. See *In re Proposed Initiative 1996–6*, 917 P.2d 1277, 1279–80 (Colo.1996). We are bound to construe the single subject requirement liberally to preserve and protect the right of initiative and referendum. See *In re Proposed Initiative on Parental Choice in Education*, 917 P.2d 292, 294 (Colo.1996).

The majority reasons that four provisions of this initiative violate the single subject requirement: the repeal of Article VI Section

10(2) Colorado Constitution requiring that each judicial district have at least one district judge, the repeal of Article VI, Section 26 of the Colorado Constitution granting the City and County of Denver control over its county court judges, the provision conferring absolute immunity upon those who criticize the qualifications of a judicial officer outside the courtroom, and the provisions divesting the Judicial Nominating Commissions of investigatory and remedial powers and changing the qualifications for Commission membership.

Construing the proposed initiative liberally as we must, it reflects a single, unifying purpose: that of drastically changing the qualifications for judicial office in this state. Connected to this purpose are the specific details concerning the qualifications to hold judicial office, the manner by which judicial officers are nominated, selected, retained, and disciplined, and the tenure of judicial officers. When viewed in this broad context, the four subjects that the majority characterizes as different and distinct are interrelated and concern the same subject.

## II.

There are certain effects of the proposed initiative that the petitioners did not address. Specifically, Section 2 contains the following separate sentence:

Article VI, sections 7, 8, 10(2), 11, 14, 15, 20(1), 23(3)(e), 23(3)(g), 26 and the second sentence of 23(3)(a) of the state constitution are repealed.

Repeal of the various constitutional provisions envisioned by this section of the proposed initiative would result in elimination of the requirement that district court and supreme court judges be qualified attorneys. Again, although this would represent a dramatic departure from the state's judicial history and selection process, it does not offend the single subject requirement because it is related to the broad subject of qualifications of judges.

The petitioners did not raise the issue of whether the ballot title and summary clause is misleading since it fails to inform the voters of the abolition of the requirement that supreme court and district court judges must be licensed attorneys. Therefore, whether this issue is properly before us, absent the Petitioner's attention to it, is itself a legitimate question.

## III.

Since we do not agree with the majority's characterization of the proposed initiative's subjects, and since we are not certain we can reach the issue that is troubling to us, we would affirm the action of the title board and we, therefore, respectfully dissent.