**Douglas CAMPBELL, Richard Hamilton, Clyde Harkins, Jack Hawkins, Daniel Hayes, Gary Swing, Jeffrey Wright, Douglas Bruce, the Initiative and Referendum Institute, Americans for Sound Public Policy, and the American Constitutional Law Foundation, Inc., Plaintiffs,**

**v.**

**Victoria BUCKLEY, in her official capacity as Secretary of State for the State of Colorado and member of the Colorado State Initiative and Referendum Title Board, Colorado State Initiative and Referendum Title Board, and Richard Westfall and Rebecca Lennahan in their official capacities as Title Board members, Defendants.**

No. CIV. A. 98–K–1022.

United States District Court,
D. Colorado.

Aug. 4, 1998.

Paul Kenneth Grant, Parker, CO, for Plaintiffs.

Maurice G. Knaizer, Deputy Attorney General, Denver, CO, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KANE, Senior District Judge.

Plaintiffs are individual activists and proponents of past and present Colorado ballot initiatives and nonprofit public interest groups dedicated to the promotion and protection of citizen initiative processes. Together they filed this 42 U.S.C. § 1983 action challenging the constitutionality of Colorado's petition laws, and seeking declaratory and injunctive relief. Specifically, Plaintiffs challenge § 1(5.5) of article V of the Colorado Constitution, which proscribes the circulation of any proposed ballot initiative for which no single-subject can be clearly expressed in its title, and the statutory title-setting process implementing it. Plaintiffs argue the proscription allows not only the State to dictate the content of proposed ballot initiatives, but political opponents to thwart their circulation entirely through the initiation of repeated single-subject challenges, both of which violate their "associational [rights], right to petition for redress of grievance[s], due process rights, free speech rights and voting rights under the First and Fourteenth Amendments." (Pls.' Compl. at ¶ 37.)

Plaintiffs also argue that the title-setting process violates the Equal Protection Clause of the Fourteenth Amendment because it subjects only citizen-based initiatives to single-subject challenges before inclusion on the ballot, while legislatively referred measures proceed directly to the ballot without such scrutiny.

In May 1998, I consolidated Plaintiffs' request for preliminary injunctive relief with their request for permanent injunctive and declaratory relief and set a June 22 trial date. The two-day trial to the court conclud-

ed on June 23, 1998. Under the "flexible" standard of scrutiny applicable to petition law challenges pursuant to *American Constitutional Law Found. v. Meyer*, 120 F.3d 1092, 1098 (10th Cir.1997), I deny both claims for relief. The evidence and arguments presented failed to demonstrate that the burdens imposed by the single-subject scheme are of a character or magnitude sufficient to trigger exacting review. I find Colorado's regulatory interests in preventing voter fraud and ensuring a modicum of support for measures placed on its ballot justify the reasonable and nondiscriminatory burdens the scheme imposes on Plaintiffs' rights of political expression and association and reject Plaintiffs' first amendment claim. I also find that a rational basis exists for the disparate treatment of measures initiated by citizens and those referred by the General Assembly, and reject Plaintiffs' equal protection claim as well.

The following constitute my findings of fact and conclusions of law pursuant to Fed. R.Civ.P. 52(a):

### I. STANDARD FOR INJUNCTIVE RELIEF.

The standard for determining whether a permanent injunction should issue is the same as that for preliminary relief, except that the court determines plaintiff's actual success on the merits rather than his likelihood of success. *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) (citation omitted). In this circuit, Plaintiffs must establish not only that Colorado's ballot initiative procedures are unconstitutional as alleged, but also that (1) they will suffer irreparable injury unless the injunction issues; (2) the threatened injury to them outweighs whatever harm the proposed injunction may cause the opposing party; and (3) the injunction, if issued, would not be adverse to the public interest. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980)(preliminary injunction standard).

### II. STANDING.

I pause briefly to address the issue of standing. Plaintiffs American Constitutional Law Foundation, Inc. (ACLF), Initiative and Referendum Institute. (IRI) and Americans for Sound Public Policy (ASPP) are nonprofit organizations that support direct democracy and seek through lawsuits and other means to promote and "protect" citizen initiative and referendum processes throughout the United States. The Defendants urge dismissal of these Plaintiffs for lack of standing, claiming the ACLF was dissolved by operation of law effective January 1, 1998,[1] and therefore lacks the legal capacity to sue, and that the interests of the remaining institutional Plaintiffs in the matters at issue are insufficient to confer standing.

In response Plaintiffs offered only vague assertions that the institutional Plaintiffs have "members and supporters in Colorado" and "intend to support future initiatives in Colorado." (Pls.' Am. Compl. at ¶¶ 12–14.) There is no allegation that the ACLF, IRI, ASPP or any of their individual members have been injured by Colorado's single-subject scheme or that they have even been involved in the particular initiatives at issue here. On this record, there is nothing from which the standing of ACLF, IRI or ASPP can be inferred or deduced. I conclude the institutional Plaintiffs lack standing to challenge Colorado's constitutional single-subject requirement or the title-setting process implementing it, and grant Defendants' motion to dismiss them from the case. My remaining findings and conclusions are directed to the individual Plaintiffs only.

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW.

#### A. Background.

Colorado law allows its citizens to place issues on the ballot by petition. Colo. Const. art. V, § 1(1). The right is not unlimited, however, as the state constitution also grants the General Assembly wide authority to adopt legislation "designed to prevent fraud,

---

1. Colo.Rev.Stat. § 7–26–111 governs the involuntary dissolution of corporations and provides that corporations suspended for the preceding three-

year period "shall be dissolved by operation of law" without the necessity of any other action under this section. § 7–26–111(5).

mistake, or other abuses" in the process. *Committee for Better Health Care v. Meyer,* 830 P.2d 884, 893 (Colo.1992) (en banc)(citing Colo. Const. art. V, § 1(2)(petitions shall be filed "in such form as may be prescribed pursuant to law") and art. VII, § 11 (granting general authority to regulate elections and citizens' right to elective franchise)).

Pursuant to this authority, the General Assembly has provided for a three-stage process for gaining access to the ballot. Colo. Rev.Stat. Ann. §§ 1–40–101 *et seq.* (Bradford 1997). First, proponents must submit a draft of the proposed measure petition to state legal and legislative offices for review and comment. *Id.,* § 1–40–105. Following a public hearing, the draft proceeds to the title board for preparation of a title, submission clause and summary. § 1–40–106, 107. The final stage includes the circulation process, a six-month period in which proponents must obtain a requisite number of qualified signatures and file the petition with the Secretary of State. *Id.,* §§ 1–40–108, 109. Petitions certified as having the requisite number of qualified signatures are included on the ballot in the next general election. § 1–40–122. The second stage of this process is at issue here.

Section 1(5.5), article V, of the Colorado Constitution provides that "[n]o measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title." Colo. Const. art. V, § 1(5.5). If a measure contains "more than one subject such that no single subject can be clearly expressed in its title, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls" pending revision and resubmission. *Id.* Section 1(5.5) was referred by the General Assembly to the people of Colorado for their approval in 1994. *See* Colo.Rev.Stat. Ann. § 1–40–106.5. Its language was drawn from § 21 of the same article V, which subjects every bill prepared by the General Assembly, other than general appropriation bills, to the same limitation. *Id.*

To implement § 1(5.5), the General Assembly provided for the establishment of a title board charged with determining compliance with the single-subject requirement, summarizing the proposed amendment, setting the title, and drafting a submission clause.

Colo.Rev.Stat. Ann. § 1–40–106. In setting a title, the board must consider the public confusion that might be caused by misleading titles "and shall, whenever practicable, avoid titles for which the general understanding of the effect of a 'yes' or 'no' vote will be unclear." § 1–40–106(b). The board's actions are subject to rehearing and expedited appeal to the Colorado Supreme Court. *Id.,* § 1–40–107. In any event, no petition for any initiative measure may be circulated before the title, submission clause and summary have been determined and fixed in accordance with these provisions.

### B. *Success on the Merits.*

#### 1. *First Amendment Claim.*

##### a. Level of Scrutiny.

■ Plaintiffs assert § 1(5.5) and the statutory title-setting procedures implementing it are subject to exacting scrutiny because they infringe on Plaintiffs' first amendment rights under the United States Constitution to petition for redress of grievances and to speak and associate freely for political ends.

Colorado's petition process has been the subject of several first amendment challenges in recent years and the law governing it is well established. The United States Supreme Court reviewed the process in *Meyer v. Grant,* 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988), invalidating a Colorado petition statute that criminalized the use of paid circulators. The Tenth Circuit recently applied *Grant* in reviewing several other Colorado petition laws, invalidating three which prescribed the qualifications and conduct of petition circulators and upholding a fourth which required circulators to sign specifically described affidavits. *American Constitutional Law Found. v. Meyer,* 120 F.3d 1092 (10th Cir.1997).

In *Grant,* the Supreme Court recognized that while the right of initiative is state-created, once a state confers such rights to its citizens, it must do so in a manner consistent with the protections afforded "core political speech" under the United States Constitution. *Grant,* 486 U.S. at 420–21, 424, 108 S.Ct. 1886. Finding the "interactive communication concerning political change" inherent in the exchange between a petition circulator and the members of the public whose support

he is soliciting, the Court agreed exacting scrutiny would apply to any law that chilled or restricted such communication. *Id.* at 421–22, 108 S.Ct. 1886.

Plaintiffs invoke *Grant* to argue that Colorado's single-subject and title-setting procedures likewise limit their "core political speech" by inhibiting their ability to circulate their petitions. (Pls.' Supplemental Br. at pp. 12–14.) The assertion belies a thoughtful reading of *Grant*[2] and ignores the Tenth Circuit's rejection of a similar argument in *American*.

After a comprehensive review of Supreme Court decisions on the subject, the Tenth Circuit in *American* concluded such a broad reading of *Grant* would "conflict with the general rule that states have the power to regulate their elections and access to their ballots." 120 F.3d at 1097 (citing *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 117 S.Ct. 1364, 1367, 137 L.Ed.2d 589 (1997))(syl.¶ (a)("States may enact reasonable regulations of parties, elections, and ballots to reduce election–and campaign–related disorder") and *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974)("[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process")). A successful petition, the Court reasoned, results in a question

being submitted to the voters and thus the petition process is both "a ballot access vehicle, as well as an avenue for political expression." *Id.* Any reading of *Grant* that would subject every petition regulation to strict scrutiny because it limited a proponent's access to voters would "tie Colorado's hands in seeking to assure equitable and efficient elections on ballot issues." *Id.* Accordingly, the "more flexible" standard applicable to election laws generally should apply. *Id.* at 1098 (citing *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992), *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983)(articulating standard), and *Timmons, supra*, at 1369–70).

Plaintiffs attempt to distinguish *American* by denying theirs is a "ballot access" case or that the election law cases upon which it is based apply. The denial is unavailing. The single–subject requirement is a precondition to be met before a proposed initiative will qualify for circulation, and ultimately, the ballot. Unlike *Grant*, the single–subject requirement neither targets the circulation process nor limits, in any way other than by limiting access to that process, the exchange of ideas that take place during circulation. As the Supreme Court stated in *Burdick*, "[t]he mere fact that a State's system 'creates barriers ... tending to limit the field of candidates [or ballot measures][3] from which

---

2. The speech at issue in *Grant* was the political discussions regarding the merits of a measure that had otherwise qualified for circulation. The Supreme Court determined Colorado's prohibition against the use of paid circulators restricted such speech by "limit[ing] the number of voices who will convey [the proponents'] message ... and, therefore, ... the size of the audience [the proponents] can reach." *Grant*, 486 U.S. at 423, 108 S.Ct. 1886. The single-subject requirement at issue in this case does not regulate the manner in which a qualified petition may be circulated nor the scope or substance of the political discussions that occur during that process. I agree with the Eleventh Circuit's distinction of *Grant* in *Biddulph v. Mortham*, 89 F.3d 1491, 1498 (11th Cir.1996), and conclude that, "[a]bsent some showing that the initiative process substantially restricts political discussion of the issue [the proponent] is seeking to put on the ballot, [*Grant*] is inapplicable."

3. Plaintiffs offer no support for their assertion that a different standard applies to laws which regulate the placement of initiatives, rather than

candidates, on the ballot. In fact, the law is to the contrary. The Tenth Circuit well before *American* equated the circulation process for proposed ballot initiatives and the nomination process for candidates, describing both as vehicles for qualifying for the ballot and stating affirmatively that the state's interest in regulating each is the same. *See Montero v. Meyer*, 861 F.2d 603, 607 (10th Cir.1988); *Montero v. Meyer*, 13 F.3d 1444, 1449 (10th Cir.), *cert. denied*, 513 U.S. 888, 115 S.Ct. 231, 130 L.Ed.2d 156 (1994). Accordingly, the Tenth Circuit adopted the "flexible" standard applicable under Supreme Court precedent to election law challenges for consideration of similar challenges to petition laws. *American*, 120 F.3d at 1097. *Accord Biddulph*, 89 F.3d at 1500 (state's broad discretion in administering initiative process subject to strict scrutiny only in certain narrow circumstances such as where regulation is content based or has disparate impact on certain political viewpoints, or where facially neutral regulation is applied in a discriminatory manner or burdened the free exchange of ideas about the objective of a proposal as in *Grant* )(applied in *American* ).

voters might choose ... does not of itself compel close scrutiny.'" *Burdick,* 504 U.S. at 433–34, 112 S.Ct. 2059 (quoting *Bullock v. Carter,* 405 U.S. 134, 143, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972)).

The Supreme Court has long recognized the tension between the unfettered rights of individuals to vote and to associate with others through the ballot on one hand, and states' rights to regulate their elections on the other. *Burdick,* 504 U.S. at 433, 112 S.Ct. 2059 ("[e]ach provision of a code, 'whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree— the individual's right to vote and his right to associate with others for political ends.'")(quoting *Anderson v. Celebrezze,* 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983)). The individual's right to vote and to associate through the ballot may be "fundamental," but it is not absolute. *Id.* (citing *Munro v. Socialist Workers Party,* 479 U.S. 189, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986)). "Common sense, as well as constitutional law, compel the conclusion that government must play an active role in structuring elections." *Id.* (citing *Storer* ).

Thus, the Supreme Court rejects the contention that every election law must be subjected to strict scrutiny simply because, at some level, it burdens the "right to associate with others for political ends." *Burdick,* 504 U.S. at 433–34, 112 S.Ct. 2059 (doing so "would tie the hands of States seeking to assure that elections are operated equitably and efficiently"). The burdens of which Plaintiffs complain are nothing more than that and application of the "flexible" standard is therefore appropriate. *American,* 120 F.3d at 1098.

■ The "flexible" level of scrutiny applicable to state election laws was adopted by the Supreme Court in *Anderson. Burdick,* 504 U.S. at 434, 112 S.Ct. 2059. Under this standard, courts must weigh the "character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against the "precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those inter-

ests make it necessary to burden the plaintiff's rights." *Anderson,* 460 U.S. at 789, 103 S.Ct. 1564. " 'Regulations imposing severe burdens must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.'" *American,* 120 F.3d at 1098 (quoting *Timmons,* 117 S.Ct. at 1370).

### b. Magnitude and Character of Burden Imposed.

■ Applying the flexible standard, I must weigh the character and magnitude of the burden Colorado's single-subject title-setting scheme imposes on Plaintiffs' First Amendment rights against the interests the State contends justify that burden, considering the extent to which the State's interests make the burden necessary. *American* at 1098.

Colorado's interests in enacting the constitutional single-subject requirement are set forth in the legislative declaration accompanying the title-setting provisions at Colo.Rev. Stat. § 1–40–106.5. According to the declaration, § 1(5.5) was designed to "prevent or inhibit various inappropriate or misleading practices that might otherwise occur" without it, and the General Assembly's intent in referring § 1(5.5) to voters for approval was "to protect initiated measures and referred constitutional amendments from similar practices" in the future. Colo.Rev.Stat. § 1–40–106.5(d). Targeted practices included "the treatment of incongruous subjects in the same measure, especially the practice of putting together in one measure subjects having no necessary or proper connection, for the purpose of enlisting in support of the measure the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits." § 1–40–106.5(e)(I). Also targeted is the use of "surreptitious measures" that fail to apprise voters of the subject of each measure by title, and therefore result in "surprise and fraud" being practiced upon voters. § 1–40–106.5(e)(II). As interpreted by the Colorado Supreme Court, the overall purpose of § 1(5.5) is to ensure that separate subjects

depend on their own merits for passage, and not on the combined support·of two or more subjects proposed together. *Matter of Proposed Initiative 1996–17,* 920 P.2d 798 (Colo. 1996); *In re Petitions,* 907 P.2d 586 (Colo. 1995).

Plaintiffs claim the State's expressed intent is "paternalistic" and an "[il]legitimate state government concern." (Pls.' Supplemental Br. at p. 22.) Plaintiffs invoke the "Declaration of Independence" and the Colorado Constitution to argue that "[t]he people are the source of all legitimate political power" and that, "[i]f the people themselves are incompetent to self-govern, there is nothing but illogic in trusting the government they selected to be more competent than they are." *Id.* Plaintiffs' polemic is with the republican form of government generally, not the specific exercise of it in this case. Moreover, representative democracy is the form of government adopted by the United States Constitution on which Plaintiffs' claims are based; the "illogic" (not to mention irony) here is with Plaintiffs' use of the Constitution as a springboard to invalidate § 1(5.) "because" it was enacted by citizen representatives, rather than. the citizens directly. Plaintiffs' entreaty to direct democracy and a new form of government must find its audience somewhere other than the courts which are bound to uphold the existing one.

■ Plaintiffs' less derisive (and more salient) argument is that the single-subject requirement imposes "severe" burdens on their rights of expression and access which cannot be justified by the interests stated.[4] These burdens include the censorship of their speech and their inability, in light of repeated single-subject challenges to their proposed measures, to gain access through the circulation process to the public and, ultimately, the ballot. The evidence and arguments presented at trial convinced me that both burdens, to the extent they were demonstrated at all, are *de minimis* and not of a character or magnitude to warrant the invalidation of Colorado's single-subject scheme under a strict scrutiny standard.

Plaintiffs offer no reasoned explanation for how Colorado's generally applicable and facially neutral single-subject requirement allows the state to "censor" their political speech or "dictate the content" of their ballot proposals. Plaintiffs contend the board's ability to set a measure's title contrary to the wishes of its proponent allows the board to define the proponent's message to the voters. The contention is perfervid. Measures are not circulated by title alone, but in their entirety, as drafted by their proponents, with no limit or restriction on the message or discussions that ensue. It is Plaintiffs who argue the intelligence and vigilance of voters is such that they can discern the nuances of a "complex initiative" without the need for a title at all. Plaintiffs tread a fine line now to argue their ability to discuss their political message ·freely is burdened by these same voters' refusal, or inability, to look beyond the title to the content below it.

It seems obvious that Plaintiffs' complaint is with the prohibition against circulation of multi-subject measures generally, not the title board's authority to fix a title to a measure that complies. That complaint, premised on the assertion that Colorado is without authority to limit the form of initiatives in any way that acts as a barrier to circulation, was squarely rejected by the Tenth Circuit in *American.* Colorado is not required to maintain a petition process that allows unfettered access to the ballot or, in this case, to the circulation process that precedes it. *See American,* 120 F.3d at 1097. The single-

---

4. Plaintiffs also claim the single-subject requirement, burdens their "fundamental right" under the Petition Clause to petition the government for redress of grievances. (Pls.' Supplemental Br. at pp. 12–14.) The assumption inherent in this claim, namely, that the "entire [state initiative] process involves a petition for redress" within "the plain language of the First Amendment," is wholly unsupported and unpersuasive. The Eleventh Circuit rejected this same argument in *Biddulph,* questioning the relevance to the voter initiative process of the right protected under the First Amendment "to make wishes and interests known to government representatives," particularly given the purpose of the former is for citizens to enact change by "bypassing their representatives altogether." 89 F.3d at 1497, n. 4. Citing the work of several scholars in the area, the Court went on to conclude that state initiative processes do not involve the sort of petitioning guaranteed by the Petition Clause. *Id.* I agree with the Eleventh Circuit and dismiss Plaintiffs' Petition Clause argument out of hand.

subject requirement is content-neutral and generally applicable. Proponents are free to propose changes to myriad subjects by initiative, as long as separate proposals are submitted for each subject. This limitation is content-neutral and generally applicable. The burdens it imposes on Plaintiffs' First Amendment rights are neither of a character nor magnitude to warrant strict scrutiny.

Next, Plaintiffs assert that the adversarial nature of Colorado's title-setting process severely burdens their ability to express themselves because it allows Plaintiffs' opponents to delay, and even thwart entirely, the circulation of Plaintiffs' petitions through repeated single-subject challenges. Only Campbell, Hayes, Hamilton, and Bruce offered testimony at trial or at the preliminary injunction hearing in this regard. Campbell, Hayes and Hamilton testified about ballot initiatives they have sponsored in the past which failed as a result of single-subject challenges. Campbell, Hayes and Bruce also testified about various existing initiatives they hope to place on the election ballot this November, which are also being delayed by single-subject challenges brought by their opponents.[5] Plaintiff Bruce testified that he and Plaintiff Wright have submitted over 12 versions of their proposed Initiative # 30 since August 1997, and that none has made it through the title-setting process.

The evidence and testimony taken at trial do not support the conclusion that the structure of Colorado's initiative process is unconstitutional or that the single-subject challenges for which it provides severely burden Plaintiffs' first amendment rights. The challenge to Campbell's Initiative # 64, for example, was filed in March 1998 immediately after the title board had set its title, when both Campbell and his opponent filed motions for rehearing. *Aisenberg*, 960 P.2d 1192, 1193. Based on the Supreme Court's recitation of the facts, the title board acted promptly, issuing an order granting both motions in part and denying them in part within two weeks. *Id.* Campbell's opponent filed a petition for review on April 6, 1998, and the Colorado Supreme Court issued its written opinion, together with a written dissent, on June 22, 1998. Charts and other statistical data submitted by Defendants at trial demonstrated that prompt review by the board and the Supreme Court is the rule, rather than the exception. In addition, I agree with Defendants that the frustration Plaintiffs Bruce and Wright have experienced at their inability to see Initiative # 30 through the title-setting process is less a function of a system gone awry than of their refusal, which Plaintiff Bruce candidly acknowledged at trial, to change the proposal's language in any significant way during the course of the 12 submissions.

Regardless of the manner in which Plaintiffs have framed their constitutional challenge on paper, the gravamen of Plaintiffs' complaint is not with the structure of Colorado's title-setting process but with specific decisions of the Colorado Supreme Court rejecting their initiatives on single-subject grounds. I pause briefly to address this aspect of Plaintiffs' case, because it provides a basis for what otherwise may be too easily dismissed as the invective of dissidents.

In their filings and in their testimony at trial, Plaintiffs referred to several Supreme Court cases which they claim target initiatives based on the unpopularity of their proponents and their message. I have reviewed many of these cases. While ultimately I agree with Defendants that the Supreme Court's interpretation and application of § 1(5.5) in individual cases is beyond my purview in the absence of a discernible pattern or practice of illicit discrimination (which I find has not been shown), I also agree that these cases provide a substantial

---

5. Campbell's Initiative # 64 proposes substantial changes to existing constitutional and statutory provisions governing the selection of state court judges and the manner and duration for which they may serve. It was recently returned to Campbell at the direction of the Colorado Supreme Court, which found the Initiative encompassed multiple subjects in violation of § 1(5.5) of Article V and struck the title and summary set by the Title Board. *See Aisenberg v. Campbell,* 960 P.2d 1192 (Colo.1998)(not yet released for publication). A single-subject challenge to Hayes's Initiative # 74 for the assessment of school impact fees on newly constructed housing units is presently on review by the Colorado Supreme Court (Pls.' Ex. 6), as is a challenge to Initiative # 30, proposed by Plaintiffs' Bruce and Wright, for a constitutional amendment imposing a series of tax and franchise charge cuts. (Pls.' Ex. 7.)

basis for Plaintiffs' trepidation. The *Aisenberg* decision clearly illustrates Plaintiffs' point.

While the title-setting process itself provided for a prompt resolution of the single-subject challenge lodged against Initiative # 64's provisions affecting the Colorado judiciary, the majority's determination in *Aisenberg* that the Initiative contained multiple subjects demonstrated a mincing and parsing of § 1(5.5) contrary to the stated purpose of the single-subject requirement and previous admonitions of the Court concerning its proper construction. One of the principal purposes of § 1(5.5) is to inhibit the practice of putting together in one measure subjects having "no necessary or proper connection" for the purpose of enlisting in support of the measure the advocates of each. Colo.Rev. Stat. § 1–40–106.5. As the dissent of Justices Kourlis and Bender acknowledged, the Colorado Supreme Court is "bound to construe the single-subject requirement liberally to preserve and protect the right of initiative and referendum." *Aisenberg*, 960 P.2d at 1202 (Kourlis, J. and Bender, J dissenting)(citing *In re Proposed Initiative on Parental Choice in Education*, 917 P.2d 292, 294 (Colo.1996)). I agree with the *Aisenberg* dissent as well as the Plaintiffs in this case that the majority's decision does not conform to this mandate.

Nevertheless, my concern here is with Plaintiffs' stated challenge to Colorado's petition process and to the constitutionality of the single-subject requirement specifically. Applying the "flexible" standard set forth in *American*, I conclude the burdens to first amendment rights of which Plaintiffs complain are not severe and do not trigger strict scrutiny. Rather, the burdens of delay and lack of access to the circulation process established by Plaintiffs are of a character and magnitude triggering less exacting review. Because Colorado has an important regulatory interest in ensuring that ballot measures depend on their own merits for passage rather than the combined merits of unrelated subjects contained within them, as well as in preventing and inhibiting voter fraud and surprise, I conclude the burdens imposed by Colorado's content-neutral and generally applicable single-subject requirement are justified. Accordingly, I reject the contention

that § 1(5.5), art. V, of the Colorado Constitution violates Plaintiffs' rights under the First Amendment of the United States Constitution.

### 2. Equal Protection.

Alternatively, Plaintiffs claim Colorado's title-setting process discriminates against citizen proponents of ballot measures in violation of the Fourteenth Amendment's Equal Protection Clause. The claim is a shot in the dark that misses its mark.

The title-setting provisions of §§ 1–40–106 and 107 establish an adversarial process through which citizen-initiated ballot measures may be subjected to a single-subject challenge before being released for circulation. No such process exists for measures referred to voters by the General Assembly, which may be challenged in court for single-subject compliance only after they have been approved by voters. *Polhill v. Buckley*, 923 P.2d 119, 120 (Colo.1996)(Colorado Supreme Court lacked subject matter jurisdiction to review legislative referendum for compliance with single-subject requirement unless and until approved by voters). Plaintiffs claim this disparate treatment of citizen-initiated and legislatively referred measures is discriminatory.

The Equal Protection Clause provides that no state may "deny to any person within its jurisdiction the equal protection of the Laws." U.S. Const. Amend. XIV. A denial occurs when the state treats similarly situated individuals differently without justification. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Unless it impinges upon a fundamental right, a classification based neither on race, sex nor national origin, and for which there is a rational basis, does not violate the Equal Protection Clause. *May v. Town of Mountain Village*, 132 F.3d 576, 580 (10th Cir.1997)(applying *Harris v. McRae*, 448 U.S. 297, 322, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980)).

■ Although worded differently, Plaintiffs' constitutional challenge is analytically the same under either theory of relief. *See American*, 120 F.3d at 1100 (when a statute allegedly limits the speech of some but not

others, "the principles of equal protection and free speech are intertwined"). Both theories turn on the contention that Colorado's single-subject requirement and title-setting process impinge on Plaintiffs' "fundamental rights." I have already determined the process does not do so. An election process deemed not to impinge on free speech rights sufficiently to warrant the application of strict scrutiny under a first amendment analysis cannot thereafter be deemed to impinge on a "fundamental right" warranting strict scrutiny under an equal protection analysis. C.f.American, 120 F.3d at 1100 (because requirement that only registered voters may circulate petitions excluded group of persons from participating in "core political speech," it was unconstitutional under both a first amendment and an equal protection analysis). Accordingly, and because I have already determined that Colorado can articulate a rational basis for it, the differential treatment of which·Plaintiffs complain does not violate the Equal Protection Clause.

Plaintiffs' equal protection claim, however, fails for an even more fundamental reason. A threshold requirement for challenging a state's decision to treat different people differently is that those people are similarly situated. *Barney v. Pulsipher*, 143 F.3d 1299, 1300 (10th Cir.1998)(to state viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them). Otherwise, there is no basis for comparison and the state's action cannot be said to be discriminatory.

█ Any assertion that individual citizens and their elected representatives are similarly situated with respect to their lawmaking function under the state constitution is fundamentally flawed. The argument, as the Oklahoma Supreme Court observed in its review of a challenged initiative petition, "quite simply mixes apples and oranges." *In re Initiative Pet'n No. 349*, 838 P.2d 1, 11 (Okla.1992).

The legislative and initiative processes are entirely different. The initiative process is primarily a private activity. Public participation in the drafting process, other than by the title board under the title-setting procedures being challenged, is minimal. *See Montero v. Meyer*, 861 F.2d at 609–10. The

legislative process, by contrast, is public. Built into this process are layers of review for constitutional compliance which the initiative process lacks. A legislatively referred measure, for example, is sponsored and introduced by an individual who was elected by the citizenry. It is subjected to debate and amendment by a body of similarly elected representatives. Even if a measure survives committee consideration and is passed by both houses, it is subject to veto by the governor. *See In re Initiative Pet'n No. 349*, 838 P.2d at 11 (contrasting initiative and legislative processes in Oklahoma). The General Assembly and citizen proponents of initiatives are not similarly situated; *ipso facto* equal protection analysis does not apply.

### C. *Remaining Lundgrin Factors.*

Plaintiffs' failure to prevail on the merits of either constitutional theory of relief renders consideration of the remaining *Lundgrin* factors unnecessary. Plaintiffs are suffering no present or threatened constitutional injury and thus no present basis for injunctive or declaratory relief exists. *See Libertarian Party v. Buckley*, 8 F.Supp. 2d 1244, 1248 (D.Colo.1998).

### IV. *CONCLUSION.*

The burdens imposed by Colorado's requirement that proposed ballot initiatives be limited to a single subject clearly expressible in its title are justified under the "flexible" scrutiny standard applicable to Plaintiffs' challenge under *American*. Colorado has an important regulatory interest in ensuring that proposed ballot measures depend on their own merits for passage and in preventing and inhibiting the use of inappropriate or misleading practices that might otherwise occur. The single-subject scheme is content-neutral and Plaintiffs' claims that it is being discriminatorily applied to them are unsupported by the evidence.

The fact that legislatively referred measures are not subject to review for single-subject compliance before they are submitted to voters does not compel the conclusion that different treatment of citizen-based initiatives violates Plaintiffs' equal protection rights. Plaintiffs and the General Assembly

are not similarly situated in terms of their lawmaking functions and even if they were, there are valid reasons for subjecting the essentially private citizen initiative process to review for single-subject compliance before a proposed measure is circulated to voters. I conclude the single-subject requirement of § 1(5.5), art. V, of the Colorado Constitution, and the statutory title-setting procedures implementing it, neither violate Plaintiffs' free speech or associational rights under the First Amendment, nor do they discriminate against Plaintiffs in violation of the Fourteenth Amendment's Equal Protection Clause. Judgment and costs for Defendants.