**Robert G. LILE, Plaintiff,**

v.

**Charles E. SIMMONS and David R. McKune, Defendants.**

**No. CIV. A. 00–3172–KHV.**

United States District Court, D. Kansas.

April 20, 2001.

Robert G. Lile, Lansing, KS, pro se.

Brian R. Johnson, Office of Atty. Gen., Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter is before the Court on Defendants' Motion For Summary Judgment (Doc. # 32) filed February 13, 2001; plaintiff's Motion For The Appointment Of Counsel (Doc. # 31) filed January 24, 2001; and plaintiff's Motion For Class Action Determination (Doc. # 30) filed January 24, 2001. For reasons set forth below, defendants' motion for summary judgment is sustained and plaintiff's motions are overruled.

## I. Defendants' Motion For Summary Judgment

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); accord *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

In pro se prisoner litigation, the Tenth Circuit endorses the completion and filing of a "Martinez report" where the prison constructs an administrative record detailing the factual investigation of the events at issue. See *Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir.1978). The Martinez report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir.1991)). The pro se prisoner's complaint, when sworn and made under a penalty of perjury, is also treated as an affidavit and, like the Martinez report, serves as evidence for a summary judgment determination. See *id.*

### Factual Background

The following facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiff.

Plaintiff is an inmate at the Lansing Correctional Facility ("LCF") in Lansing, Kansas. Charles E. Simmons is Secretary

of the Kansas Department of Corrections ("KDOC") and David R. McKune is Warden at LCF.

The KDOC utilizes a custody classification system that is intended to predict the risks which an offender poses within a correctional facility and outside a correctional facility, to the general public, if the offender should escape. The classification system is set forth in the KDOC Custody Classification Manual. The four custody classification levels are minimum, medium, maximum and special management. Inmates who are in administrative or disciplinary segregation or who have not yet been evaluated are classified as special management.

Plaintiff was convicted of aggravated kidnaping, rape and aggravated sodomy. In 1983, during his first year of incarceration, plaintiff was also convicted of attempted aggravated escape from custody. Due to the nature of his convictions, the KDOC placed him in maximum security. In 1989, because of good behavior, the KDOC changed plaintiff's security classification to "medium by exception." In 1994, plaintiff requested a security classification of "minimum by exception," which the KDOC denied. See *Lile v. Simmons*, 23 Kan.App.2d 1, 2, 929 P.2d 171, 172 (1996). In a prior lawsuit in state court, plaintiff alleged that prison authorities violated his constitutional rights in denying this request. See *id.* The state district court dismissed plaintiff's claims. On appeal, the Kansas Court of Appeals affirmed. It held that "Kansas law does not create a liberty interest regarding a prison inmate's security classification." 23 Kan.App.2d at 4, 929 P.2d at 173.

Plaintiff currently has a custody classification score of nine points. In calculating his score, the KDOC gave plaintiff three points because of the length of his minimum sentence (29.5 years to life), two points because of the nature of his crime (aggravated kidnaping), and four points because of an attempted escape from a maximum security correctional facility over five years ago. Because plaintiff had a score of at least four points but less than ten points, he received a "medium" security classification pursuant to the KDOC Custody Classification Manual.[1]

In addition to the above custody classification system, the KDOC conducts an "In–House System Risk for Custody Assessment" ("In–House Risk Assessment") to determine the security threat which each inmate poses. The assessment attempts to evaluate the inmate's motivation to escape, based on the possibility that civil commitment proceedings may be initiated against that inmate when his or her prison term expires.[2] The In–House Risk Assessment impacts an inmate's custody classification only if (1) the assessment concludes that the inmate has a high probability of facing civil commitment proceedings on release from prison and (2) the inmate otherwise has a "minimum" security classification. If an inmate satisfies both conditions, the KDOC transfers the inmate from minimum to medium security.

The In–House Risk Assessment concluded that plaintiff was a "medium risk" of civil commitment proceedings. Moreover,

---

1. Inmates who have a custody classification score of three or less points are, by criteria, minimum custody. Inmates with four to nine points are classified as medium custody. Inmates with ten or more points are classified as maximum custody. A custody classification level may be increased or decreased by exception.

2. This security concern is analogous to the concern which arises when an offender who is serving a relatively short sentence faces additional criminal charges which are serious and involve the prospect of a long sentence.

as explained above, plaintiff had a "medium" security classification pursuant to the KDOC Custody Classification Manual. Plaintiff therefore remained in medium security and his In–House Risk Assessment did not impact his security classification level.

The In–House Risk Assessment is intended to predict the outcome of the Multi–Disciplinary Team Assessment ("MDT Assessment"). The Attorney General for the State of Kansas uses the MDT Assessment to determine whether civil commitment procedures should be initiated upon an inmate's release from prison, pursuant to the Commitment of Sexually Violent Predators Act, K.S.A. § 59–29a01 *et seq.* The MDT Assessment is not conducted until an individual receives an anticipated release date. Plaintiff has not been granted parole, and he does not have an anticipated release date. Accordingly, no MDT Assessment has been conducted on plaintiff.

Plaintiff alleges that in addition to the In–House Risk Assessment and the MDT Assessment, the KDOC conducts a Mental Health Assessment on certain inmates. Plaintiff does not allege that the KDOC has conducted or intends to conduct such an assessment on him, and the record does not provide any detail as to this fact.

Plaintiff, on behalf of himself and those similarly situated, alleges that defendants denied him procedural due process with respect to his In–House Risk Assessment. He also challenges the Mental Health Assessment procedure. Plaintiff does not challenge the MDT Assessment process.

### Analysis

#### A. In–House Risk Assessment

##### 1. Procedural Due Process

■ To establish a violation of procedural due process rights based on his custody classification level, plaintiff must establish (1) that he had a protected liberty interest in receiving a new or retaining a current custody classification and (2) that defendants' actions adversely affected that interest without the protections of due process guaranteed by the Fourteenth Amendment. See *Slezak v. Evatt,* 21 F.3d 590, 593–94 (4th Cir.) (citing *Wolff v. McDonnell,* 418 U.S. 539, 555–57, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)), *cert. denied,* 513 U.S. 889, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994).

■ The procedural due process clause applies only if defendants deprived plaintiff of a liberty or property interest. See *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Prison officials are granted broad discretionary authority over the institutions they manage. *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Inmate classification is a matter within the discretion of prison officials. *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). A state prison inmate generally has no liberty interest in a particular custody classification by operation of the due process clause. See *Levoy v. Mills,* 788 F.2d 1437, 1440 (10th Cir.1986). A liberty interest in custody classification therefore may arise only if state law or prison regulations create such a right. See *Chambers v. Colo. Dep't of Corrections,* 205 F.3d 1237, 1242 (10th Cir.2000) (citing *Meachum v. Fano,* 427 U.S. 215, 223–27, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)). Even if state law creates such a right, however, it does not create a liberty interest protected by the due process clause unless restraint of that right results in a hardship that is both "atypical" and "significant" when compared to ordinary prison life. *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293. "[T]he baseline for determining what is 'atypical and significant'—the

'ordinary incidents of prison life'—is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." *Griffin v. Vaughn,* 112 F.3d 703, 705 (3d Cir.1997) (quoting *Sandin,* 515 U.S. at 483–84, 115 S.Ct. 2293).

■ Plaintiff alleges that he has a property or liberty interest in a correct risk level classification, but he does not specify the basis for any such interest in state law or prison regulations. Indeed, in one of plaintiff's prior suits against the KDOC, the Kansas Court of Appeals specifically rejected his argument:

> The statute and regulations provide the DOC with unfettered discretion in making such decisions and do not require that an inmate be granted a lesser security status upon any specific finding as to the inmate's behavior.... Kansas law does not create a liberty interest regarding a prison inmate's security classification.

*Lile,* 23 Kan.App.2d at 3–4, 929 P.2d 171; see *Walling v. Simmons,* No. 94–3398–GTV, 1998 WL 229541, at *3 (D.Kan. Apr.8, 1998) (no protected liberty interest in minimum custody classification); *Jaben v. Moore,* 788 F.Supp. 500, 504 (D.Kan. 1992) (Kansas regulatory scheme does not create protected liberty interest in inmate custody classification). In addition, in another lawsuit by plaintiff against the KDOC, the Tenth Circuit noted that "we do not necessarily disagree with the Kansas Supreme Court's determination that an inmate's housing and custody classifications and other privileges attendant to those classifications 'are not atypical and do not pose a significant hardship within a prison' within the meaning of the due process clause." *Lile v. McKune,* 224 F.3d 1175, 1185 (10th Cir.2000) (citing *Bankes v. Simmons,* 265 Kan. 341, 351, 963 P.2d 412,

420, cert. denied, 525 U.S. 1060, 119 S.Ct. 629, 142 L.Ed.2d 567 (1998))

■ Plaintiff has not shown that his custody classification or In House Risk Assessment resulted in an "atypical" or "significant" hardship. "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell,* 441 U.S. at 547, 99 S.Ct. 1861. An attempt to classify prisoners by their security risk based on such factors as the nature of their crime and previous escape attempts does not trigger the due process clause. Plaintiff's allegations, even when construed most favorably to him, do not show any restrictions that are more harmful than the restrictions on all inmates in medium security. Such restrictions are not atypical or significant hardships. Plaintiff therefore has not identified a protected liberty interest.

■ Even if plaintiff had a protected liberty interest in a certain custody classification level or In–House Risk Assessment score, he has not shown that he will suffer any harm from his current "medium" classification level and "medium" In–House Risk Assessment score. Plaintiff maintains that he should be afforded the full panoply of procedural protections in these assessments, but he fails to identify any adverse effect from his current scores. The authorities cited by plaintiff provide that in an assessment process, an inmate is entitled to certain procedural protections when the results of the assessment will have an immediate impact on the inmate such as community notification that the inmate is a convicted sex offender or the denial of parole. See *E.B. v. Verniero,* 119 F.3d 1077 (3d Cir.1997) (community registration), cert. denied, 522 U.S. 1109, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998);

*Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367 (1995) (same); *Morrissey v. Brewer,* 408 U.S. 471, 486, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation). In contrast, in this case, plaintiff contends that his In–House Risk Assessment score may have some *future* impact on him. In particular, plaintiff claims that defendants may use the information in the future (1) to pursue his civil commitment under the Kansas Commitment of Sexually Violent Predators Act or (2) to deny him parole.[3] Any such future harm is too speculative to implicate the due process clause. Moreover, consistent with the authorities cited by plaintiff, the State of Kansas provides additional procedural safeguards before defendants can pursue civil commitment or deny plaintiff parole. See K.S.A. §§ 59–29a05, 29a06 (process for civil commitment); K.S.A. §§ 22–3717 (process for parole hearing). In other words, plaintiff's custody classification is not dispositive with respect to his eligibility for parole, the possibility of civil commitment, or any requirement of community registration. He will have an opportunity to contest his In House Risk Assessment score if and

when defendants attempt to use it at any future proceedings. Because plaintiff cannot show either that he has a protected liberty interest or that defendants infringed any such interest, the Court sustains defendants' motion for summary judgment.[4]

### 2. Qualified Immunity

■■■■■ Defendants also assert that they are entitled to summary judgment because the undisputed facts establish that they are entitled to qualified immunity. Qualified immunity shields a defendant from pecuniary liability unless he violated clearly established constitutional or statutory norms. *Anderson v. Creighton,* 483 U.S. 635, 639–640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Defendants are entitled to this defense if their conduct was objectively reasonable in light of clearly established law and the information they possessed at the time. *Martin v. Bd. of County Comm'rs,* 909 F.2d 402, 405 (10th Cir.1990). The Tenth Circuit has set forth the following method of analysis when the qualified immunity defense is raised on

---

**3.** Plaintiff also argues that defendants may use his In–House Risk Assessment to require community notification that he is a convicted sex offender. Plaintiff fails to explain how his In–House Risk Assessment score is relevant under the Kansas Offender Registration Act. The community notification requirement is triggered by conviction of certain crimes. See K.S.A. §§ 22–4902, 22–4904. No separate hearing is conducted unless a sex offender asks the sentencing court for relief from the registration requirements. See K.S.A. § 22–4908.

**4.** In support of his arguments regarding the In–House Risk Assessment, plaintiff argues that certain procedural protections also should be provided in his MDT Assessment. See Motion And Memorandum In Support Of Petitioners 42 U.S.C. § 1983 at 5, 12–13, attached to Civil Rights Complaint Pursuant To 42 U.S.C. § 1983 (Doc. # 1) filed May 8, 2000; Response To Martinez Report (Doc.

# 29) filed January 24, 2001 at 2–4. The Court does not read plaintiff's complaint and other filings as stating a separate due process claim based on the MDT Assessment. To the extent that plaintiff's complaint can be read to state such a claim, the Court must reject it as not ripe. Plaintiff did not exhaust his administrative remedies with respect to any such claim. Moreover, the KDOC has not conducted an MDT Assessment on plaintiff. The KDOC may ultimately decide in plaintiff's favor on any such assessment or the KDOC may not even conduct an assessment on plaintiff. Because plaintiff cannot show any harm from the MDT Assessment process either actual or threatened, he is not entitled to relief. See *Tyler v. Kansas Lottery,* 14 F.Supp.2d 1220, 1223 (D.Kan.1998) (to obtain permanent injunctive relief, plaintiff must demonstrate imminent threat of irreparable injury); *Campbell v. Buckley,* 11 F.Supp.2d 1260, 1262 (D.Colo.1998) (same).

summary judgment: once the defense has been raised, plaintiff has the burden to identify both the clearly established law that defendant allegedly violated and the conduct giving rise to the alleged violation. If plaintiff meets this burden, defendant must then demonstrate that no material issues of fact remain as to whether his actions were objectively reasonable in light of the law and the information he possessed at the time. If defendant makes such a showing of objective reasonableness, he is entitled to summary judgment unless plaintiff can demonstrate a factual dispute which is relevant to defendant's immunity claim. *Id.*

For the reasons set forth above, plaintiff has failed to articulate a liberty interest which is protected by the due process clause. Absent an identifiable liberty interest, plaintiff cannot establish that defendants violated clearly established law. Accordingly, defendants are entitled to summary judgment on the issue of qualified immunity.

### 3. Absolute Immunity

■■■■ To the extent that plaintiff brings suit against Simmons and McKune in their official capacities, defendants argue that they are entitled to absolute immunity from monetary damages. The Eleventh Amendment doctrine of sovereign- immunity bars actions for damages against state officials in their official capacities. See *Kentucky v. Graham*, 473 U.S. 159, 165–167, n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Riddle v. Mondragon*, 83 F.3d 1197, 1201 (10th Cir.1996). Simmons and McKune therefore are absolute-

ly immune from damages in their official capacity.

### B. Mental Health Assessment

■■■■ Section 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under ... any ... Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory. See *Garrett v. Hawk*, 127 F.3d 1263, 1265 (10th Cir.1997). "A litigant's failure to raise issues during an administrative appeal can constitute a failure to exhaust administrative remedies." *Kikumura v. Hurley*, 242 F.3d 950, 956 (10th Cir.2001) (citing *Rivera–Zurita v. INS*, 946 F.2d 118, 120 n. 2 (10th Cir. 1991)).

■■■■ Here, plaintiff filed a grievance with regard to only his In–House Risk Assessment. On May 1, 2000, plaintiff's Unit Team officer responded that no due process concerns were implicated. On May 3, 2000, Warden McKune informed plaintiff that he agreed with the Unit Team officer. Although the parties dispute whether plaintiff filed any further appeal, the record clearly reflects that in his grievance, plaintiff did not contest his Mental Health Assessment. Indeed, in his complaint, plaintiff does not even specify whether defendants have conducted a Mental Health Assessment. Based on plaintiff's failure to file an administrative claim regarding the Mental Health Assessment, the Court must dismiss the claim without prejudice.[5]

---

**5.** The Tenth Circuit has held that a plaintiff must exhaust only those administrative remedies that are "actually available." *Garrett v. Hawk*, 127 F.3d 1263, 1267 (10th Cir.1997). Accordingly, a plaintiff need not exhaust administrative remedies for claims where he or she seeks money damages if the pertinent administrative procedures do not provide for

monetary relief. Here, plaintiff seeks only injunctive relief. See Motion And Memorandum In Support Of Petitioners 42 U.S.C. § 1983 at 17–18, attached to Civil Rights Complaint Pursuant To 42 U.S.C. § 1983 (Doc. # 1). The Court therefore dismisses his entire claim as to the Mental Health Assessment.

## II. Motion For Appointment Of Counsel

 Plaintiff is proceeding in forma pauperis and has requested appointment of counsel. Under 28 U.S.C. § 1915, the Court has the discretion to appoint counsel for such a plaintiff. See *Miller v. Glanz*, 948 F.2d 1562, 1570 (10th Cir.1991) (citing *Blankenship v. Meachum*, 840 F.2d 741, 743 (10th Cir.1988) and *McCarthy v. Weinberg*, 753 F.2d 836 (10th Cir.1985)). In determining whether to appoint counsel, the Court considers several factors including (1) the merit of the litigant's claims; (2) the nature of the factual issues raised in the claims; (3) the litigant's ability to present his or her claims; and (4) the complexity of the claims involved. *Id.* The Court finds that plaintiff's claim is without merit for the reasons set forth above. In addition, the Court notes that plaintiff's claim does not present difficult factual or legal issues and plaintiff has adequately presented his claim. For these reasons, the Court declines to appoint counsel.

## III. Motion For Class Certification

 Plaintiff asks the Court to certify a class. A prerequisite for class action certification is a finding by the Court that the representative party can "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Due process requires that the Court "stringently" apply the competent representation requirement because class members are bound by the judgment (unless they opt out), even though they may not actually be aware of the proceedings. See *Albertson's, Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459, 463–64 (10th Cir.1974). Because a layperson ordinarily does not possess the legal training and expertise necessary to protect the interests of a proposed class, courts are reluctant to certify a class represented by a pro se litigant. See 7A Charles A. Wright et al., Federal Practice and Procedure § 1769.1 n. 12; see also *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975) (pro se prisoners are not adequate representatives for a class). Moreover, although plaintiff has the right to appear pro se on his own behalf, he may not represent another pro se plaintiff in federal court. See 28 U.S.C. § 1654; *United States v. Grismore*, 546 F.2d 844 (10th Cir.1976); *Herrera–Venegas v. Sanchez–Rivera*, 681 F.2d 41, 42 (1st Cir.1982); *United States v. Taylor*, 569 F.2d 448 (7th Cir.), cert. denied, 435 U.S. 952, 98 S.Ct. 1581, 55 L.Ed.2d 803 (1978). Accordingly, the Court concludes that plaintiff is not an adequate class representative and overrules his motion to certify a class.

**IT IS THEREFORE ORDERED** that Defendants' Motion For Summary Judgment (Doc. # 32) filed February 13, 2001 be and hereby is **SUSTAINED** as to plaintiff's procedural due process claim based on the KDOC In–House System Risk for Custody Assessment. Plaintiff's procedural due process claim based on the KDOC Mental Health Assessment process is **DISMISSED without prejudice** for failure to exhaust administrative remedies.

**IT IS FURTHER ORDERED** that plaintiff's Motion For The Appointment Of Counsel (Doc. # 31) filed January 24, 2001 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that plaintiff's Motion For Class Action Determination (Doc. # 30) filed January 24, 2001 be and hereby is **OVERRULED.**